Brinkerhoee, J.
This is a petition in error, filed in the district -court of Ross county, for the purpose of reversing a judgment of -the common pleas of that county, and which was, by the district •court, reserved for decision here.
The plaintiff in error was plaintiff in the court below, and the defendants in error were defendants there.
To the petition of the plaintiff in the common pleas, the defend.ant Hope, administrator, etc., demurred, on the ground that the petition did not state facts sufficient to constitute a cause of action. The court of common pleas sustained the demurrer to the petition; und the plaintiff not desiring to amend his petition, final judgment dismissing his petition was thereupon rendered against him.
The ruling of the court of common pleas sustaining the demurrer to the petition is now assigned for error; and the question in the case is, whether the petition states facts sufficient to constitute a ■cause of action. The petition is as follows:
“ The plaintiff says that, about March 26, 1856, the defendant, Peter Porter, made and delivered to the said Joseph Hope, since ■deceased, his certain promissory note, of which the following is .a copy:
“ ‘ $4,000. Five years after date I promise to pay to the order of Joseph Hope, four thousand dollars, at the Ross County Bank in the city of Chillicothe, with ten per cent, interest after due, payable annually. March 26, 1856.
“ < Peter Porter.’
“ On the back of said note is the following indorsement: ‘ Interest paid to March 26,1862, on within note. Joseph Hope.’
* “ That to secure the payment of said sum of money mentioned in said note, and five other notes of $400 each, which were given by said Porter to said Joseph Hope, for the interest on said $4,000 note, till it should fall due, payable at the Merchants’ and Mechanics’ Bank of Philadelphia, State of Pennsylvania, in one, two, three, four, and five years after date, March, 26, 1856, by said Porter to .said Joseph Hope or order, the said Peter Porter, with his said wife, the defendant Rachel Porter, made and delivered their certain deed of mortgage, duly executed and acknowledged by them, to *538 said Joseph Hope, and thereby conveyed to him, in fee simple, the' following lands and tenements situate in the county of Ross, and State of Ohio, aforesaid, and bounded and described as follows, to-wit. [Here follows a description of the premises.]
“Said mortgage deed had a condition thereunder written, that if the said Peter Porter should pay said sums of money secured by said several -promissory notes, with the interest, when the same should become due, to said Joseph Hope or his assigns, then said mortgage-should be void, but otherwise the same was to remain in full force and virtue in law.
“ That said mortgage so duly executed by said Peter and Rachel Porter, was by said Joseph Hope duly delivered to the recorder of said Ross county for record, on the said 26th of March, a. d. 1856, at four o’clock in the afternoon, and duly recorded in the records of mortgages for said county, on the next day, in vol. 4, pages 60 and 61 of said mortgage records.
“ That said five interest notes, $400 each, were duly paid as they severally fell due, the last payment on account thereof being made about March 26, 1861; and also about March 26, 1862, another' year’s interest was duly paid on said $4,000 note above set forth ;. which is all that has been paid on account thereof in any way; that said mortgage deed has become absolute, and that there is now due to the plaintiff from the defendant, Peter Porter, the said sum. of four thousand dollars ($4,000), with interest at the rate of ten per cent, per annum, from March 26, 1862.
- “ That said Joseph Hope died on the 12th of July, a. d. 1863, intestate, and the defendant, Robert Hope, is his adminintrator, he-^having been duly appointed and qualified, and is now acting as such.
“That said Joseph Hope never was married, and for years before- and at the time of his death was a man of wealth, and inclusive of what he owed and afterward gave plaintiff\ his estate amounting, free-of all his debts, except as aforesaid, etc., to from $60,000 to $65,000; and his heirs were only his brother, the said Robert, plaintiff’s' mother (who was his sister), Mary Ann Phipps, and the children and grandchildren of a deceased sister, Hannah Griffith.
‘ “ That for near ten years prior to the death of said Joseph Hope,, the plaintiff, who is his nephew, worked and labored for said Joseph Hope, on said deceased’s farm in Pennsylvania; that when and before plaintiff so commenced work as aforesaid, said deceased prom *539 ised him, in consideration thereof, no certain wages, bnt promised plaintiff that, if he would so work for him, and take an interest in his affairs, as if they were plaintiff’s own, he would finally make or leave the plaintiff well off, and would do more for him than he would do for anybody else; that upon the faith of such promise and assurance, the plaintiff commenced so to work for said deceased, and continued for the time aforesaid, which was until the death of said Joseph Hope, for six of which years plaintiff’s said mother also lived with and kept house for said deceased, without compensation, continuing so to do up to the death of said Hope - and during this time the plaintiff, after the family was supplied, was allowed the proceeds of two, three, and four cows, the poultry, fruit, and meats, making about $60 per year cash, which sufficed to-clothe him, and leave him at the death of said Hope about $100 besides, of which the plaintiff has a full account, or nearly so; and the plaintiff during said time did live with and perform such work and labor for said deceased to the entire satisfaction of said deceased. That in consideration of the premises the said Joseph Hope, about January 13, 1862, duly assigned said note, or so much of it as should remain unpaid at his death, to the plaintiff, said assignment to take effect at the death of said Hope; which assignment is evidenced by the writing of said deceased, hereinafter set forth, and which, with said note, was inclosed by *said deceased in a common letter envelope, and part of the terms of such assignment by the deceased indorsed on said envelope in writing. Said inclosed writing is in these words and figures:
“ ‘ Sadsbury, January 13,1862.
“ ‘ The contents of this envelope is to be given to Thomas H. Phipps, in payment of wages for services rendered since he has heen living with.me on the farm.
“‘N. B. He is also authorized by me to indorse this note, and fr> collect and enter satisfaction at the recorder’s office in Chiilieothe, when paid.
“ ‘Joseph Hope.’
“ The writing on said envelope is in these words and figures:
“ ‘January 13, 1862. This is to be given to Phipps by the person legally authorized to examine contents.
“‘J. Hope.’
*540 “ Afterward, said deceased, about March 26,1862, received one year’s interest on said note.
“ That after said Joseph Hope’s death, said envelope, containing said indorsement, assignment, and note, were found together, where they had been deposited in a box by said Hope. And the plaintiff accepts the same as a full satisfaction 'of his claims against said deceased for said work and labor, with what the deceased gave him, in addition, shortly before his death, as a gift purely.
“ That after the death of said Joseph Hope, and after the appointment of said Robert Hope as such said administrator, the said administrator delivered said note to the plaintiff, and the plaintiff accepted the same as his ; but the said administrator has since become dissatisfied with having allowed the plaintiff the same, and has claimed the same as such said administrator; and has also notified said Peter Porter not to pay said promissory note or any part thereof to the plaintiff, as he claims the same as administrator, and in consequence thereof said Porter has declined to pay the same or any part thereof to the plaintiff, until his right thereto is established.
“ Wherefore, the plaintiff asks that the ownership of said promissory note be adjudged to him as against said ^administrator, ,and that he be held entitled to the moneys due thereon; that the amount coming from said Peter Porter, $4,000, with interest at the rate of ten per cent, per annum, from March 26,1862, be found due; that said mortgage be foreclosed, and that said Peter Porter adjudged to pay the same with all costs properly taxable to him, within a short time to be fixed by the court, and, in default of such payment, that said premises be ordered to be sold to satisfy the same, etc., as upon execution at law, free and discharged from the contingent right of dower of the said Rachel Porter; for other costs, and other proper relief,” etc.
Wo are of opinion that there was no error in the ruling and judgment of the court of common pleas.
The plaintiff can not make out a title to the note, mentioned in the petition, on the ground that the same was a gift to him by his uncle, the intestate. On this point, a large part of what was said in Hamor v. Moore, 8 Ohio, 239, is directly applicable. “ Here was no gift inter vivos, for there was no delivery during the life of the intestate, and no such delivery was intended by him.” He exercised acts of ownership in respect to it several months after its *541 deposit in the envelope, by receiving and indorsing a payment of interest on it; and by the terms of his indorsement on the envelope, he evidently contemplates a delivery only after his own decease. “And to a valid gift intor vivos, delivery and acceptance, either actual, constructive, or symbolical, are everywhere held to- be essential.”.
“ Nor. do the facts present the case of a gift causa mortis. A delivery during the life of the donor, and subject only to his power of revocation during his life, is as essential to a good gift causa mortis as to a gift inter vivos.”
Nor is the case of the plaintiff aided by the fact that after the-death of the intestate the administrator delivered the note in question to the plaintiff. It is true the terms of the indorsement of the intestate upon the envelope assumed to authorize such delivery. But, in law, it was pure assumption; for the authority assumed to-be conferred could be legally conferred only by last will and testament. If the ^writing inclosed in, and the indorsement written on the envelope be regarded as constituting an agency, they amount to nothing. Ordinarily, the authority delegated to an agent ceases on the death of the principal. The death of the principal operates as a revocation of the powers before conferred on the-agent. And this case does not come within any recognized exception to this rule.
It is not claimed in argument that the paper inclosed in the envelope, or the indorsements on the envelope, or both together, are good as a testamentary disposition. They clearly are not, by-reason of their want of conformity to the provisions of the statute of wills.
But the question remains, do the facts stated in the petition,, taking them as true, make a case of any sort in favor of the plaintiff against the personal representative of the intestate, on the ground of contract between the plaintiff and the intestate? What was that contract as alleged in the petition ? It was this, that the intestate “promised the plaintiff that if he would work for him, and take an interest in his affairs, as if they were plaintiff’s own, he-would finally make or leave the plaintiff well off, and would do more for him than he would do for anybody else.” And the. plaintiff alleges that he accepted this offer and performed the contract on his part. This, we have no doubt, would make a cause of action against the administrator of the intestate, if the contract. *542 were broken on the part of the intestate. But was it broken on ■the part of the intestate ? To this inquiry the petition gives no response. No breach of contract is alleged. And, for aught that .appears in the petition, the intestate may have made and left the plaintiff well off, and may have done better by him him than he ■did by anybody else. The plaintiff admits having received gifts to .■some extent, but he carefully abstains from stating the amount of them. Indeed, there is nothing in the petition inconsistent with the supposition that the intestate, during his lifetime, gave to the plaintiff every cent’s worth of his property, except the note here in •controversy.

Judgment affirmed.

Scott, C. J., and Day, White, and Welch, JJ., concurred.